## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JEFFREY D. HUDDLESTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-CV-1222-MAB** |
| | ) | |
| **SHANE TASKY and CONNIE** | ) | |
| **HALLIDAY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Presently before the Court is a Motion for Judgment on the Pleadings filed by Defendants Shane Tasky and Connie Halliday (Doc. 60; *see also* Doc. 61). For the reasons set forth below, Defendants' Motion for Judgment on the Pleadings is GRANTED (Doc. 60).

### BACKGROUND

Plaintiff Jeffrey Huddleston filed this suit pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights that occurred while he was incarcerated at Big Muddy River Correctional Center ("Big Muddy") (*see* Doc. 1; *see also* Doc. 21). Specifically, Plaintiff's Complaint alleges that he was to be released on Mandatory Supervised Release on March 1, 2019 (Doc. 1 at p. 6; Doc. 21 at p. 2). However, Defendants denied all of Plaintiff's proposed host sites for improper reasons (Doc. 21 at p. 2). As a result, Plaintiff was held in IDOC custody for an additional fifteen months beyond his Mandatory Supervised Release date, until he was finally released on June 22, 2020 (*Id.*).

Plaintiff filed his Complaint on April 13, 2023 (Doc. 1). The Court screened the Complaint pursuant to 28 U.S.C. § 1915A and permitted Plaintiff to proceed on one Eighth Amendment cruel and unusual punishment claim against Defendants John Doe Field Services Supervisor and Jane Doe Clinical Services Supervisor (Doc. 21). Thereafter, Shane Tasky was substituted for the John Doe Defendant and Connie Halliday was substituted for the Jane Doe Defendant (Doc. 47). After receiving Defendants' Answer (Doc. 57), the Court entered an Initial Scheduling Order that set a deadline of March 10, 2025, for Defendants to file dispositive motions based upon Plaintiff's failure to exhaust his administrative remedies (*see* Doc. 59).

On January 27, 2025, Defendants filed the instant Motion for Judgment on the Pleadings (Doc. 60) and Memorandum in Support (Doc. 61). Plaintiff then filed a Response in Opposition on February 24, 2025 (Doc. 64). Defendants did not file a reply in support. Meanwhile, in light of Defendants' pending Motion for Judgment on the Pleadings, Defendants moved to stay the deadline to file exhaustion-based dispositive motions (Doc. 65). The Court granted Defendants' request and stayed the exhaustion-based dispositive motion deadline (Doc. 66).

<u>LEGAL STANDARD</u>

A party can move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "after the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). A Rule 12(c) motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312 (7th Cir. 2020) ("The only

difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same."). Therefore, dismissal is appropriate "when the factual allegations in the complaint, accepted as true, do not state a facially plausible claim for relief." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016).

Regarding affirmative defenses such as the statute of limitations, a plaintiff does not need to anticipate and attempt to allege facts in the complaint negating the affirmative defense. *Id. See also Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 822 (7th Cir. 2022) ("A complaint need not anticipate affirmative defenses like the statute of limitations and will not be dismissed just because it does not confirm its own timeliness."). But when a complaint alleges facts that unambiguously establish the tardiness of the complaint, then dismissal under Rule 12(c) is appropriate. *See generally Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *Mohamed v. WestCare Illinois, Inc.*, 786 Fed. App'x 60, 61 (7th Cir. 2019) ("A district court may enter judgment on the pleadings if the pleadings show that the statute of limitations blocks the plaintiff's claims."); *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017) (approving of granting motion to dismiss based on statute of limitations "when the complaint alleges facts sufficient to establish that the suit is indeed tardy.").

The statute of limitations for Plaintiff's § 1983 claim is two years. *Woods v. Illinois Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 768 (7th Cir. 2013) ("[T]he limitations period applicable to *all* § 1983 claims brought in Illinois is two years."); *see also Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001) (explaining that federal courts adopt the forum state's statute of limitations for personal injury claims, which is two years in Illinois).

"Moreover, because 'the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application,' federal courts must 'also borrow[ ] the state's tolling rules—including any equitable tolling doctrines.'" *Johnson*, 272 F.3d at 521 (quoting *Smith v. City of Chicago Heights*, 951 F.2d 834, 839-40 (7th Cir. 1992)). Accordingly, "a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process." *Id.* at 522. However, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). Thus, under federal law, it is "the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citations omitted).

## ANALYSIS

Defendants contend that they are entitled to judgment on the pleadings because Plaintiff's pleadings demonstrate that he did not file this action within the two-year statute of limitations (Doc. 61 at p. 3). Defendants aver that even when viewing the facts and allegations in the light most favorable to Plaintiff, his cause of action accrued no later than the date of his release on June 22, 2020 (*Id.* at pp. 3-4). Therefore, because Plaintiff did not file his Complaint until April 13, 2023, over two years and nine months later, his claim is barred by the statute of limitations (*Id.*). In response, Plaintiff contends that: (1) he filed numerous grievances during the fifteen-month period he was allegedly wrongfully held at Big Muddy; and (2) he suffers from a legal disability due to

Defendants' allegedly tortious actions, such that the doctrine of equitable tolling should apply (Doc. 64).

Pursuant to federal law, Plaintiff's Eighth Amendment cruel and unusual punishment claim accrued on the last incidence of the alleged violation. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) ("For continuing Eighth Amendment violations, the two-year period starts to run (that is, the cause of action accrues) from the date of the last incidence of that violation, not the first."). In other words, "[t]his refusal continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail." *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001). Therefore, at the latest, Plaintiff's Eighth Amendment claim accrued on June 22, 2020, the date the alleged constitutional violation ended when Plaintiff was released from Big Muddy. *See also Green v. Waggoner*, 20-CV-00965-SPM, 2021 WL 2414656, at *3 (S.D. Ill. June 14, 2021) (finding the plaintiff's Eighth Amendment cruel and unusual punishment claim based upon the defendants' allegedly holding the plaintiff beyond his release date had accrued because it did not challenge the validity of his underlying conviction).[1] Consequently, as

---

[1] There are exceptions to when a claim accrues under federal law. *See, e.g., Mihelic v. Will Cnty., Ill.*, 826 F. Supp. 2d 1104, 1112 (N.D. Ill. 2011) (explaining that under federal law, a claim does not accrue, and therefore the statute of limitations does not begin to run, until the plaintiff discovers that he has been injured). However, Plaintiff has not argued any of those exceptions, such as the discovery rule, are applicable (*see generally* Doc. 64). And even if Plaintiff had raised this argument, the Complaint and the nature of his claim, as well as the filings attached to the Complaint and Plaintiff's Response, all unequivocally demonstrate that Plaintiff was aware of the violation and his injury for the entirety of the period in which he was allegedly held beyond his Mandatory Supervised Release date (*see, e.g.* Doc. 1 at p. 4) (Indicating Plaintiff complained to prison authorities, including Defendants, "during the time of the occurrence."). *See also Fultz v. Duckworth*, 962 F.2d 10 (7th Cir. 1992) ("We conclude that the statute [of limitations] must begin to run upon occurrence of the harm to Mr. Fultz, and uphold the district court's analysis that the injury to Mr. Fultz commenced on May 7, 1987 and continued through [his release date on] July 16, 1988").

is apparent from the face of Plaintiff's Complaint, absent any tolling related extensions, the statute of limitations for Plaintiff's claim would have lapsed on June 22, 2022, two years after his claim accrued upon his release. *See Woods*, 710 F.3d at 768.

Plaintiff first alleges that the statute of limitations was tolled while he attempted to exhaust his administrative remedies during the fifteen-month period he was allegedly wrongfully incarcerated at Big Muddy (Doc. 64 at pp. 4-5). While tolling undoubtedly applies to the period of time that Plaintiff was attempting to exhaust his administrative remedies, the fatal flaw to Plaintiff's argument is that the requirement for him to exhaust his administrative remedies was not present once he was released. *See Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899, 907 (N.D. Ill. 2009) ("In this case, it is undisputed that Phipps and House had been released at the time the suit was filed. Hence, at the very least, Phipps's and House's claims are not subject to, or barred by, the PLRA."); *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004) ("Whether Mr. Witzke ought to be considered a prisoner under the PLRA is governed by our precedent. In determining whether a plaintiff is a 'prisoner confined in jail,' we must look to the status of the plaintiff at the time he brings his suit."). Therefore, any exhaustion-based tolling would have ended when he was released on June 22, 2020. And crucially, Plaintiff's own pleadings demonstrate that he was released for a period of more than two years before his reincarceration (*see* Doc. 1 at p. 14) (indicating Plaintiff was reincarcerated on 9/23/22). *See also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012) ("In deciding a Rule 12(b)(6) motion, the court may also consider documents attached to the pleading without converting the motion into one for summary judgment."). Consequently, even

assuming Plaintiff was attempting to exhaust his administrative remedies for the entire 15-month period that he was allegedly wrongfully denied supervised release, Plaintiff cannot argue that his efforts to exhaust his administrative remedies were sufficient to toll the statute of limitations for long enough to excuse his otherwise untimely filing.[2]

Presumably in recognition of this issue, Plaintiff devotes much of his Response to arguing that the doctrine of equitable tolling should apply to the period he was released because he was and continues to be legally disabled due to Defendants' actions (*see generally* Doc. 64). Namely, Plaintiff contends that due to Defendants' allegedly wrongful actions which extended his incarceration by 15 months, he now suffers from "acute anxiety and crippling depression which rendered him incapacitated in the legal sense." (*Id.* at p. 2). Ultimately, the Court does not find this argument to be persuasive.

Certainly, under Illinois law, a "legal disability" may warrant equitable tolling in appropriate situations. *See Goodman v. Cook Cnty.*, 16 C 9387, 2017 WL 6447874, at *3 (N.D. Ill. Mar. 15, 2017), *aff'd,* 697 Fed. Appx. 460 (7th Cir. 2017). *See also* 735 ILCS 5/13-211 (the Illinois statute providing for extensions of the statute of limitations for legal disability).

> A person suffers from a "legal disability" where he or she is "entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his [or her] estate or financial affairs." *Estate of Riha v. Christ Hospital,* 187 Ill. App. 3d 752, 756, 135 Ill. Dec. 907, 544 N.E.2d 403 (1989). In a case where a legal disability is alleged, the record must contain sufficient allegations of fact from which one could conclude that the person seeking to be found legally disabled was incompetent or suffered from serious mental disorder which made that person entirely without understanding or capacity to make or communicate

---

[2] Similarly, in recognition of Plaintiff's aversions that he filed other grievances which were ignored (*see* Doc. 64 at p. 3), as well as Plaintiff's grievance filing from October 1, 2022 (Doc. 1 at pp. 12-13), the Court's analysis assumes that Plaintiff immediately resumed his efforts to exhaust his administrative remedies after he was reincarcerated and continued to do so until the day he filed his Complaint.

> decisions regarding his person and totally unable to manage his estate or financial affairs. *Sille v. McCann Construction Specialities Co.,* 265 Ill.App.3d 1051, 1055, 202 Ill. Dec. 808, 638 N.E.2d 676, 679 (1994). In a personal injury case, a person is not legally disabled if he or she can comprehend the nature of the injury and its implications.

*In re Doe*, 703 N.E.2d 413, 414 (Ill. App. Ct. 1998). However, "equitable tolling is 'rare' and courts extend this relief sparingly." *Finnegan v. Kink*, 3:20-CV-00218-GCS, 2024 WL 1345632, at *7 (S.D. Ill. Mar. 29, 2024); *see also Hertel v. Sullivan*, 633 N.E.2d 36, 41-42 (Ill. App. Ct. 1994) (Holding that 735 ILCS 5/13-211 and 5/13-212(c) "provide that the statute of limitations does not run against a person under * * * legal disability" and "were designed to ensure that statutes of limitation were generally tolled during a plaintiff's infancy, mental incompetency, or imprisonment. In order to take advantage of those sections, plaintiff's complaint must sufficiently allege facts to show the existence of "legal disability.").

Here, however, Plaintiff's own pleadings demonstrate that he was not under a legal disability during the period in question. Most significantly, Plaintiff attached a grievance to his complaint, dated October 31, 2022, wherein he stated, "So after I did my 18 months I was finally released 6-22-2020, I had wrote this case up BUT [due] to the pandemic of Covid 19 I never heard [any]thing." (Doc. 1 at pp. 12-13). This concession, which was attached to Plaintiff's Complaint and is considered part of the pleadings, is fatal to Plaintiff's equitable tolling assertions because it demonstrates that he had the capacity to comprehend the nature of the injury and its implications after his release. *See In re Doe*, 703 N.E.2d 413, 414 ("In a personal injury case, a person is not legally disabled if he or she can comprehend the nature of the injury and its implications."); *Sille v.*

*McCann Const. Specialties Co.*, 638 N.E.2d 676, 680 (Ill. App. Ct. 1994) ("[A]lthough an alcoholic, [the plaintiff] was not so physically or mentally impaired that he could not comprehend the nature of his injury and its implications."); *Pruitt v. Green*, 16 C 11544, 2018 WL 3546743, at *3 (N.D. Ill. July 24, 2018) (Granting the defendants' motion to dismiss "[b]ecause Pruitt has not adequately asserted that he was under a legal disability that tolled the statute of limitations, his claims are too late."); *Doe v. Toys R Us*, 10 CV 2116, 2010 WL 3168299, at *3 (N.D. Ill. Aug. 5, 2010) ("Availing oneself of legal rights, such as filing a lawsuit or an EEOC charge, indicates that a legal disability does not exist."). In fact, Plaintiff's admission that he was preparing to bring legal action against Defendants contradicts his argument that he could not even manage "even the most basic tasks" due to Defendants' allegedly wrongful conduct. *See Denton v. United States*, 440 Fed. Appx. 498, 502 (7th Cir. 2011) ("But Denton did not substantiate his assertion that he was under a disability, and his actions while incarcerated undercut any suggestion that he was unaware of his obligation to file the administrative claim, or unable to fulfill that obligation because of mental incapacity.").

In *Mihelic v. Will Cnty., Ill.*, the district court similarly found that the plaintiff's complaint was plainly untimely under the governing statute of limitations. 826 F. Supp. 2d 1104, 1110 (N.D. Ill. 2011). However, just as is the case here, the plaintiff argued that even if her claim was otherwise untimely, the statute of limitations should be equitably tolled because her mental illness constituted a legal disability under Illinois law. *Id.* at 1114. The court rejected this argument, finding the plaintiff's complaint did not allege "any facts suggesting that she was entirely without capacity to make or communicate

decisions or unable to manage her affairs as a result of her mental illness." *Id.* at 1115. To the contrary, "Plaintiff's arguments about the effect her mental illness may have had on her ability to understand her rights [were] undercut by the fact that she filed a complaint with the Sheriff's Department" several months before she allegedly realized a constitutional violation had taken place. *Id.* Here, like *Mihelic*, Plaintiff's claim that he was incapable of performing even the most basic of tasks is undercut by the grievance attached to his Complaint which states that he was aware of his claim and took affirmative steps to bring a lawsuit. *Id.*

In addition, Plaintiff's claim that he did not take further action due to Covid-19 directly contradicts his newly raised contention that he did not do so because of a legal disability (*see* Doc. 1 at p. 13). "When an exhibit contradicts the allegations in the complaint, ruling against the non-moving party on a motion to dismiss is consistent with our obligation to review all facts in the light most favorable to the non-moving party." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Therefore, while Plaintiff's Complaint did not allege that he was legally disabled after his release (and did not need to because that is an affirmative defense to which Plaintiff was not required to anticipate), he may not now raise arguments in response to Defendants' motion to dismiss that are contradicted by his pleadings. *See In re Gibrick*, 561 B.R. 470, 473 (Bankr. N.D. Ill. 2016) ("Subject to consideration, as well, are facts disclosed for the first time in the plaintiff's response to the motion, provided those facts are consistent with the complaint itself."); *Call One Inc. v. Berkley Ins. Co.*, 655 F. Supp. 3d 733, 741 n.2 (N.D. Ill. 2023) ("In responding to a motion to dismiss, a plaintiff may elaborate on his factual allegations so long as the

new elaborations are consistent with the pleadings. But a plaintiff may not use his response brief to amend his complaint[.]") (internal quotation marks and citations omitted).

Moreover, Plaintiff's Response argues that he continues to suffer from the same legal disability to this date (see Doc. 64 at p. 3) ("To date, he still suffers, making it difficult for him to function on a basic level."). While such a concession alone may not have doomed Plaintiff's case, when viewed in conjunction with his grievance, the issue with arguing that his legal disability is still ongoing is that it contradicts his claim that he could not bring suit because of his legal disability. Put simply, Plaintiff's pleadings demonstrate that his anxiety and depression do not qualify as a "legal disability" because those same harms did not prevent him from preparing to bring suit in 2020 or actually filing this lawsuit in in 2023.

In conclusion, Plaintiff's own pleadings and concessions demonstrate that he is not entitled to the "rare" application of equitable tolling. *See Finnegan*, 2024 WL 1345632 at *7.[3] *See also Angiulo v. United States*, 867 F. Supp. 2d 990, 1001 (N.D. Ill. 2012) (rejecting the plaintiff's assertions of legal disability and granting a motion to dismiss because "Plaintiff has not pleaded any specific facts to support a finding that equitable tolling applies."); *Dugan v. Washington*, 99 C 4382, 2000 WL 336554, at *4 (N.D. Ill. Mar. 28, 2000)

---

[3] To the extent Plaintiff has even raised such an argument, the Court also rejects any contention that the statute of limitations should have been tolled until he learned of Defendants' identities. *See Harris v. Renken*, 23-1213-JEH-JES, 2023 WL 9004910, at *4 (C.D. Ill. Dec. 28, 2023) ("The caselaw is clear, however, that the statute began to run on May 16, 2022, when he became aware of the alleged false imprisonment, assault, and battery, not the day he learned the Defendants' identities. As a result, Plaintiff cannot claim that the initial lack of knowledge as to the Defendants' identities hampered the exercise of his rights in some extraordinary way.").

(Granting motion to dismiss as to time-barred claims because the plaintiff has not sufficiently pleaded facts constituting a legal disability that would toll the statute of limitations."); *Dikcis v. Indopco, Inc.*, 96 C 5526, 1997 WL 211218, at *9 (N.D. Ill. Apr. 18, 1997) (Granting motion to dismiss and finding no legal disability because the complaint did not "allege facts sufficient to prove legal disability."); *Jo v. Private Holding Group, LLC*, 2016 IL App (1st) 151335-U (Finding the plaintiff failed to demonstrate that she is or was 'under a legal disability'" and therefore "dismissal of her claims with prejudice was proper."); *Dickerson v. City of Chicago*, 21-CV-2955, 2022 WL 3369271, at *5 (N.D. Ill. Aug. 16, 2022) (Granting the individual defendant's motion to dismiss because "Plaintiff has not met his burden to demonstrate that this case merits equitable tolling."). Therefore, Defendants' Motion for Judgment on the Pleadings is GRANTED (Doc. 60).

<u>CONCLUSION</u>

For the reasons discussed above, Defendants' Motion for Judgment on the Pleadings is **GRANTED** (Doc. 60). This matter is **DISMISSED with prejudice** as time-barred by the statute of limitations. The Clerk of Court is **DIRECTED** to enter judgment and close the case on the Court's docket.

IT IS SO ORDERED.

DATED: September 19, 2025

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

<u>NOTICE</u>

Plaintiff is advised that this is a final decision ending his case in this Court. If Plaintiff wishes to contest this decision, he has two options: he can ask the undersigned to reconsider the Order or he can appeal to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal in the district court *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard). The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See id.*

On the other hand, if Plaintiff wants to start with the undersigned, he can file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), but such a motion is not required to preserve his appellate rights. Any Rule 59(e) motion *must* be filed within twenty-eight (28) days of the entry of judgment. FED. R. CIV. P. 59(e), and the deadline *cannot* be extended. *See* FED. R. CIV. P. 6(b)(2). Any motion must also comply

with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010) ("This court has held that otherwise timely skeletal motions that fail to satisfy the requirements of Fed. R. Civ. P. 7(b)(1) do not postpone the 30–day period for filing a notice of appeal . . . .").

So long as the Rule 59(e) motion is in proper form and filed no later than 28 days after the judgment is entered, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the motion is ruled on. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal, and the clock will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.,* 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, the deadline for filing a notice of appeal can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.